**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**


**RICHARD D. PASSMAN**                                                                    **PLAINTIFF**

**Versus**                                          **CIVIL ACTION NO. 2:05cv85-KS-JMR**

**SHERIFF JOEL THAMES;**
**And CNA SURETY**                                                              **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion to Dismiss and for Summary Judgment

**[#25]** filed on behalf of Sheriff Joel Thames and CNA Surety (the "defendants").  The

court has reviewed the motion, the response, the briefs of counsel, the authorities cited

and the pleadings and exhibits on file and after a thorough consideration of the

foregoing, the court is of the opinion that the motion should be granted in part and

denied in part based on the following:


## FACTUAL BACKGROUND

The plaintiff, Richard D. Passman, was arrested along with his brother, Jed L.

Passman and Chad Gray on Mississippi State Highway 27 near the county line

between Lawrence and Walthall Counties on Sunday afternoon, January 27, 2004.[1]  As

a result of evidence discovered during the stop, all three individuals were charged with

---

[1]  The defendants aver that the arrest occurred on January 17 while the plaintiff avers that it occurred on January 27.  The exact date is not outcome determinative and thus the court will utilize the date asserted by the plaintiff to discuss the facts surrounding this incident.

theft of anhydrous ammonia, conspiracy to manufacture a controlled substance, and intent to distribute a controlled substance.

The three were booked into the Lawrence County Jail pending bind or trial.  An area adjoining the cell which housed the plaintiff, called the day room, was also used as a dining room to accommodate the adjacent twelve cells with a maximum occupancy of twenty-four prisoners.  While the plaintiff was incarcerated there, all cells were opened periodically for brief visits to the day room, or for a longer period of time for three daily meals which were served exclusively in the day room.

The plaintiff alleges that on April 4, 2004, at around 12:00 o'clock p.m. when all twelve cell doors were open for the prisoners to take a break in the day room, another inmate, Derrick Peyton, left cell number 147, came into the day room and immediately started an unprovoked, violent, menacing approach to the plaintiff.  The plaintiff allegedly asked the jailer to protect him from Peyton but he asserts that no help was forthcoming.  Peyton abruptly and violently assaulted the plaintiff, causing serious and allegedly permanent injuries, including fracturing the bones on the left side of his jaw in three different places. The plaintiff started bleeding profusely immediately after the attack.

The plaintiff alleges that Derrick Peyton is a local citizen about 28 years of age and weighing around 200 pounds, and that he was arrested and released on three different occasions prior to April 4, 2004.  He further asserts that Peyton's arrests and detentions were related to a mental condition and that he was confined primarily as a mental patient related to his violent and bizarre conduct, rather than a criminal act.  The plaintiff states that at some time prior to April 4, 2004, Peyton had been again confined

2

in the Lawrence County jail and placed in cell number 147, and that he was given the same unrestricted privileges as other inmates.  The plaintiff contends that Derrick Peyton was and is a well known individual who has suffered through mental problems for a long period of time and that the defendants knew of his general reputation for uncontrollable, violent activities over which he had no conscious control.

After the attack on the plaintiff by Peyton, personnel at the Lawrence County Jail consulted with the Sheriff and then transported the plaintiff to the hospital at Monticello where it was revealed that he had fractures of his jaw and a displacement of the sockets at the TMJ joints in both jaws. The local hospital was unable to treat the plaintiff so he was transported to the University of Mississippi Medical Center in Jackson where he was confined for two days until surgery was performed on April 6, 2004, to place four point fixation screws and 22-gauge wire to secure his jaws.  After the surgery, the plaintiff was discharged from the hospital and transferred back to the Lawrence County jail in Monticello.

The plaintiff further alleges that on or about May 26, 2004,[2] it was reported to Deputy Sheriff Delane Butler that the plaintiff and his brother, Jed L. Passman, were passing paper material back and forth between their separate cells by the use of a string attached to a bar of soap.  The plaintiff states that shortly after being confronted by a jailer about the incident and while he was seated in a chair in the day room he was confronted by Sheriff Thames who made an inquiry as to what he had been doing.

The plaintiff contends that Sheriff Thames then placed his hand on the plaintiff's

_____

[2]  The plaintiff's brief and various other documents refer to this date as May 15, 2004.  The incident report filed by the Sheriff and other documents refer to it as May 26.

right shoulder and after talking to him in a rather calm manner, suddenly and without warning struck the plaintiff on his jaw with such force that he had to grab onto a stationary metal table to keep from falling to the floor.  The plaintiff alleges that he immediately reported to the Sheriff that he thought his right jaw had been broken and that he was definitely injured.

The plaintiff asserts that the Sheriff took the position that nothing happened  and that he was not going to secure any treatment for the plaintiff and instead placed the plaintiff in solitary confinement in a cell known as the "drunk tank" wherein he was denied food and proper bed clothing for around 14 hours.

The plaintiff alleges that he was not afforded any medical treatment for this second assault until a previously scheduled appointment for his first injury at the University Medical Center on June 14, 2004.  During this interval, the plaintiff contends that he bled from time-to-time and was obviously injured because his appearance disclosed swelling and discoloration on the right side of his face.

According to the plaintiff, when he was taken to UMC for his June 14 appointment, the physician took additional x-rays and determined that there was a new fracture of the plaintiff's right jaw and that all of the fractures from the first injury to his left jaw had been re-injured.  The plaintiff asserts that as a result of the second injury, he was required to have his jaws wired shut for an additional four to six weeks, and that in total they were wired closed for four months.  He asserts that as a result of the injuries, he has suffered permanent nerve and bone damage and continues to suffer debilitating pain and difficulty chewing and talking.

The plaintiff has filed suit against Sheriff Joel Thames in his individual and

4

official capacities, and CNA as the county surety,  pursuant to 42 U.S.C.A. § 1983 and

the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution

and corresponding sections of the Mississippi Constitution as well as asserting a state

law claim of intentional infliction of emotional distress and a demand for punitive

damages.

The defendants have filed the present motion asserting that the Sheriff is entitled

to qualified immunity on the individual claims and that the plaintiff cannot establish a

municipal policy on which to hold the Sheriff in his official capacity liable, thus entitling

both defendants to summary judgment.


## STANDARDS OF REVIEW

## Motion to Dismiss

The defendants have moved the court to dismiss this matter under Rule 12(b)(6)

for failure of the plaintiff to state a claim upon which relief can be granted.  In ruling on a

12(b)(6) motion, the court may not go outside the pleadings, specifically the complaint

in this case.  "The Rule 12(b)(6) motion . . . only tests whether the claim has been

adequately stated in the complaint."  5A C. WRIGHT & A. MILLER, FEDERAL

PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298 (1990).  As the Fifth Circuit has

stated, "We may not go outside the pleadings.  We accept all well-pleaded facts as true

and view them in the light most favorable to the Plaintiff.  We cannot uphold the

dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.'"  *Colle v. Brazos County, Texas*,

981 F.2d 237, 243 (5th Cir. 1993); (internal footnotes and citations omitted). *See also, Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th Cir. 1994).

Since the 12(b)(6) motion usually only tests the allegations of the complaint, "a post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment must be used to challenge the failure to state a claim for relief." 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1357 at 300 (1990). However, such a result is only technically correct since subject matter jurisdiction may be raised at any time, either by the court *sua sponte* or by a motion to dismiss. *See, Burks v. Texas Co.*, 211 F.2d 443 (5th Cir. 1954).

Therefore, any motion which challenges the subject matter jurisdiction of the Court would be proper at any time, even up until trial. Rule 12(h)(3), Fed.R.Civ.P. Thus, while technically a 12(b)(6) motion may be made at any time, even after a responsive pleading is filed, the court still may not consider anything but the well-pleaded allegations of the complaint in ruling on it. If any matters outside the complaint are considered, the motion is converted to one for summary judgment. Regarding such conversion, Rule 12(b) provides specifically;

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"The element that triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material. It is not relevant how the defense

6

is actually denominated."  5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND

PROCEDURE: Civil 2d § 1366 at 485 (1990).  Further, as the Fifth Circuit has

explained,

> The only way to test the merit of a claim if matters outside the bounds of
> the complaint must be considered is by way of motion for summary
> judgment.  In that event, even if a motion to dismiss has been filed, the
> court must convert it into a summary judgment proceeding and afford the
> plaintiff a reasonable opportunity to present all material made pertinent to
> a summary judgment motion by Fed.R.Civ.P. 56.  *Arrington v. City of
> Fairfield,* 414 F.2d 687 (5th Cir. 1969); 5 C. WRIGHT & A. MILLER,
> FEDERAL PRACTICE AND PROCEDURE § 1366 at 679 (1969).

*Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980).  On a 12(b)(6) motion, of

course, the court must view all well-pleaded facts as true and in the light most favorable

to the non-moving party.  However, "once the proceeding becomes one for summary

judgment, the moving party's burden changes and he is obliged to demonstrate that

there exists no genuine issue as to any material fact and that he is entitled to judgment

as a matter of law."  C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND

PROCEDURE: Civil 2d § 1366 at 506 (1990).

Therefore, it is clear that if the court is to consider the deposition testimony and

other extra-pleading matters presented, the Motion to Dismiss must be converted into

one for summary judgment under Rule 56.  Additionally, the court notes that the

defendants have also moved for summary judgment and the plaintiff has been afforded

an appropriate opportunity to respond.  The standard of review for motions for summary

judgment as often stated by the Court is as follows.

**Motion for Summary Judgment**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."   *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  Id.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d

8

265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian,* 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the

nonmoving litigant is required to bring forward 'significant probative evidence'

demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting*

*Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary

judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

      While generally "[t]he burden to discover a genuine issue of fact is not on [the]

court," (*Topalian* 954 F.2d at 1137), "Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention-the court must

consider both before granting a summary judgment."  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## Exhaustion of Administrative Remedies under the PLRA

      The defendants argue that the plaintiff's claims should be dismissed because he

failed to avail himself of the administrative remedies offered by Lawrence County to

review his claims prior to the institution of litigation pursuant to the dictates of the Prison

Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.  The plaintiff responds that he was

released from custody on November 4, 2004, and the present action was filed on March

31, 2005.  Thus, he was not a "prisoner" for purposes of the PLRA at the time suit was

filed.

The plaintiff is correct that the PLRA does not apply to persons who are not prisoners at the time litigation is implemented.  *See Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000).  The defendants' motion to dismiss on the basis of non-compliance with the requirements of the PLRA is denied.


**Standard for Pretrial Detainee Claims**

The plaintiff has conceded, in his response to the defendants' motion, that the Fourth, Fifth and Eighth Amendments have no application to this case and thus the defendants' motion on these claims is confessed.   He also admits that punitive damages against the County (i.e., the Sheriff in his official capacity) are not available under § 1983, and that claim is dismissed.

The remaining federal constitutional violation alleged is under the Fourteenth Amendment based on the plaintiff's due process rights as a pre-trial detainee and excessive force claims.  Indeed, the Fifth Circuit has instructed that "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)(citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

In *Hare* the Fifth Circuit also held "that both medical care and failure-to-protect cases should be treated the same for purposes of measuring constitutional liability."  Further,  when "a pretrial detainee's claim is based on a jail official's episodic acts or

omissions, . . . the proper inquiry is whether the official had a culpable state of mind in acting or failing to act[,]" and that "a standard of deliberate indifference [is] the measure of culpability for such episodic acts or omissions."  74 F.3d at 643.  Restated, the Court held "that the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs."  *Id.* at 647-48.


**Federal Claims and Section 1983 Liability**

The plaintiff must establish, as a prerequisite to maintaining a Section 1983 claim, the following:

(a) that the defendants were acting under color of state law, and

(b) that while acting under color or state law, the defendants violated rights of the plaintiff that are protected by the United States Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).

There is no dispute that the Sheriff, in both his individual and official capacities was acting under color of state law at all relevant times.  Further, the plaintiff has properly alleged a violation of his protected Constitutional rights so as to trigger potential liability under § 1983.

12

**Official Capacity Claim**

The plaintiff has sued the Sheriff in his individual and official capacities.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed. 2d 662 (1974); *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980).  "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

The plaintiff argues that he has not sued the county but the "Sheriff's department," and that such is a viable entity subject to suit.  He cites the recent Mississippi Supreme Court case of *Brown v. Thompson*, ___ So.2d ____, 2006 WL 490074 (Miss., March 2, 2006) as support for his argument.  In *Brown*, the Mississippi Court held that a Sheriff's department was not an entity subject to civil suit and that the plaintiff should have named the county a defendant in a suit involving an automobile accident with a deputy sheriff.  This holding is directly contrary to the plaintiff's position.

Therefore, contrary to the plaintiff's assertions otherwise, this suit against the Sheriff in his official capacity is equivalent to a suit against Lawrence County.  The plaintiff's argument to the contrary is simply specious.  The official capacity claim must be reviewed in light of the standard for the imposition of governmental liability.  The individual capacity claim will be dealt with in a later section.

**Section 1983 and Governmental Liability**

The Fifth Circuit discussed the standard to govern the imposition of governmental liability in Section 1983 actions in *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984):

> A municipality is liable under Section 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.  Official policy is:
>
> > 1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority;
> >
> > or
> >
> > 2.  A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority.  Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

"The policy is that of the [county], however, where it is made by an official under authority to do so given by the governing authority."  *Bennett v. Slidell*, 728 F.2d 762, 769 (5th Cir. 1984).  "Policymakers act in the place of the governing body in the area of their responsibilities; they are not supervised except as to the totality of their performance."  *Id.* at 769.  However, under Section 1983, there can be no  liability based merely on the doctrine of *respondeat superior*.  *See Monell*, 436 U.S. at 690; and *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1303 (5th Cir. 1995).

14

There must either be direct involvement of the county in the infringement or the violation must occur as a result of the county's official policy.

Thus, under the facts of this case, in order to find the Sheriff liable in his official capacity in this Section 1983 action, the constitutional deprivation must have resulted from the implementation or execution of a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers, or the Sheriff himself as an official policymaker. This includes customs and usages which have become so persistent and widespread as to be permanent and well settled so as to constitute a custom or usage with a force of law. *See Monell, supra*.

Plaintiff's complaint charges the Sheriff and unnamed jailers with inadequate training and inadequate supervision. The plaintiff's brief sets forth a litany of policies which were allegedly violated by the Sheriff in his official capacity without the direct personal involvement of the Sheriff, except as to the alleged attack by the Sheriff, which will be dealt with later.

Inadequate police training or supervision can only serve as the basis for a §1983 claim where it amounts to a deliberate indifference to the rights of the persons coming into contact with the police. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Liability can never be imposed on the basis of *respondeat superior*. *See Monell, supra*. The plaintiff has wholly failed to come forward with any evidence to create a genuine issue of material fact that the Sheriff in his official capacity, or the County, failed to train and/or supervise the unnamed jailers in such a way that evinces a deliberate indifference to the rights of the plaintiff. Such is

15

his burden.  *See Burge v. Parish of St. Tammany,* 187 F.3d 452, 472 (5th Cir. 1999).

The plaintiff argues that the Sheriff and unnamed others were aware of the dangerous and unstable propensities of Derrick Peyton and that they should have foreseen the potential for him to cause harm to the plaintiff.  To support this argument the plaintiff offers nothing more than hearsay, conjecture and anecdotal evidence that Peyton suffered mental or emotional problems.  There is no evidence that Peyton and the plaintiff had any problems of confrontations that would have put the Sheriff or others on notice of a problem.  The plaintiff does not allege that he warned anyone that Peyton was a theat or that he requested protection from him prior to the single episode on April 4, 2004, which he alleges occurred suddenly and without provocation or warning..

Under Supreme Court precedent, a single episodic event of unconstitutional activity is not sufficient to impose liability unless it is shown that the incident was caused by existing, unconstitutional policies attributable to the policy makers.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).  In this case, not only has the plaintiff failed to show any unconstitutional activity, he has wholly failed to point to any unconstitutional policy which led to his injuries.  The official capacity claims fail.

The plaintiff has also alleged that the defendants were deliberately indifferent to his serious medical needs after the April 4 incident and again after the May 26 incident.  The proof is clear that the plaintiff was afforded appropriate medical care on April 4.  He was transported to the local hospital and then to UMC in Jackson for surgery.  He was timely transported to Jackson for follow-up appointments until his release.  There is no evidence in the record that the plaintiff requested any medical treatment beyond what

16

was afforded him regarding the April 4 incident.

The plaintiff has alleged that after the Sheriff assaulted him on May 26, 2004, he was refused medical treatment even though he requested it repeatedly.  He also asserts that the Sheriff had him placed in the detox unit as punishment after the incident.  The Sheriff admits that he "lightly slapped" the plaintiff on the back of the head on May 26 but insists that no injury occurred and that the plaintiff did not request medical assistance or treatment.

The plaintiff has filed an affidavit asserting his multiple requests for treatment that were allegedly ignored after the May 26 incident.  The defendants have moved to strike the affidavit as inconsistent with the plaintiff's sworn deposition testimony and hearsay.  A party may not create an issue for trial by submitting evidence which directly contradicts prior sworn testimony without some justifiable reason.  *See Ware v. Frantz*, 87 F.Supp.2d 643 (S.D. Miss. 1999).  The plaintiff has offered no reason for the differing versions of his testimony and thus the affidavit will be stricken to the extent that it impermissibly varies from the plaintiff's prior sworn testimony.  The plaintiff has failed to show that there is a genuine issue for trial on the question of deliberate indifference to his serious medical needs either intentionally by the Sheriff or through the invocation of custom or policy.

## QUALIFIED IMMUNITY

Plaintiff's Complaint charges the Sheriff individually with conduct that allegedly led to his injuries, specifically that the Sheriff assaulted him.  While admitting that he "lightly slapped" the plaintiff, the Sheriff has moved for summary judgment on the basis

of qualified immunity. To establish liability on a personal basis, there must be some connection between the actions of the defendant and the alleged constitutional violation.  *See Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) and *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986). Thus, the plaintiff must offer proof that the Sheriff actually assaulted him to succeed on this claim because "[s]upervisory officials may be liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff[s'] injury."  *Baker* 75 F.3d at 199, (quoting *Mouille v. City of Live Oak, Tex.,* 977 F.2d 924, 929 (5th Cir. 1992)).

The Fifth Circuit has held that "government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).

Under the two step analysis employed by the Fifth Circuit in reviewing claims wherein qualified immunity has been asserted, the Court must first determine "whether the plaintiff has asserted the violation of a clearly established constitutional right.  If so, the court decides whether the defendant's conduct was objectively reasonable." *Sorenson*, 134 F.3d at 327 (quoting *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)(applying the two-prong test of *Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S. Ct. 1789, 1792-93, 114 L. Ed. 2d 277 (1991)).

18

The first step "is subdivided into three questions: (1) whether a constitutional violation is alleged; (2) whether the law regarding the alleged violation was clearly established at the time of the alleged violation; and (3) whether the record shows that a violation occurred." *Dudley v. Angel*, 209 F.3d 460, 462 (quoting Kerr v.Lyford, 171 F.3d 330, 339 (5th Cir. 1999)(citing Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988)).  "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall*, 213 F.3d at 230 (quoting *Malley v. Briggs*, 475 U.S. at 343).

An assault by the Sheriff would be a violation of the law.  The evidence that such an assault took place is flimsy at best.  Some contact between the plaintiff and the Sheriff took place on May 26, 2004, by the Sheriff's own admission.  The court does not have a crystal ball to ascertain who is telling the truth, such credibility determinations are left to the trier of fact.  The plaintiff has provided scant medical evidence that he suffered an injury at some point after the April 4 incident.  Specifically, in the X-rays taken on June 14, 2004, there is a mention of a possible fracture of the right mandible which was not mentioned in the surgery records for the left mandible.

There are no doctor's notes or other testimony to confirm this diagnosis, hence the court has characterized the evidence as scant.  The plaintiff has alleged and sworn under oath that the Sheriff struck him with considerable force on May 26.  The Sheriff has admitted "lightly slapping" the plaintiff on the back of the head.  Who is telling the truth and was the Sheriff's conduct objectively reasonable?  These are questions for the jury.  The Sheriff is not entitled to qualified immunity as a matter of law at this point.

19

**STATE LAW CLAIMS**

The plaintiff has also asserted state law claims of negligent and intentional infliction of emotional distress, and claims allegedly arising under the Mississippi Constitution.  These claims survive against the Sheriff in his individual capacity only as the alleged assault by the Sheriff is the only claim not subject to dismissal.  Any such assault would be outside the Sheriff's official duties and could not subject the County to liability.

The remaining state law claims invoke this court's supplemental jurisdiction.  Supplemental jurisdiction under 28 U.S.C. § 1367 is a codification of the ancillary and pendent jurisdiction doctrines.  Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . .

If the Court dismisses the federal claims, the Court may properly decline jurisdiction over the state law claims under Subsection (c) of § 1367.  "It has consistently been recognized that [supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218, 228 (1966).  However, the decision to exercise supplemental jurisdiction or not should be viewed consistent with considerations of judicial economy, convenience and fairness to the litigants.  *See Laird v. Bd.  of Trustees of Inst. of Higher Learning*, 721 F.2d 529 (5th Cir. 1983).

20

In this situation, where the court is allowing the individual capacity claim against the Sheriff relating to the alleged assault of May 26 to go forward and where the parties have proceeded through discovery and are approaching a trial date, it would create inconvenience and hamper judicial economy to refuse to continue to exercise supplemental jurisdiction.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment filed on behalf of Sheriff Joel Thames in his Official Capacity and CNA Surety **[#25]** is Granted and Plaintiff's Complaint against the defendants is Dismissed with prejudice on these claims.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Summary Judgment filed on behalf of Sheriff Joel Thames in his individual capacity on both the federal and state law claims  **[#25]** for the alleged assault of May 26, 2004, is Denied, as to all other claims not related to the alleged assault of May 26, 2004, the motion is granted.

A separate judgment in accordance with Rule 58, Federal Rules of Civil Procedure will be file herein.

SO ORDER AND ADJUDGED this the 2nd day of May, 2006.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE